V. Bondi Morning, Mr. Rabin. Obviously aware by virtue of the letter that Mr. Jimenez has been removed from the United States, but we asked you to come in anyway because we did have some questions for you. Now he has to waive the argument, so I could ask you the question if you want to just start. It's up to you. Okay. May it please the Court, Arthur Rabin on behalf of the Respondent, the Attorney General. I would be happy to answer the Court's questions, obviously. I do not have to stick to the outline. Yeah, well, you can go to your outline, but the question at least I had is, it wasn't really raised by Mr. Jimenez, but our precedent with respect to whether or not for particularly serious crime you have to make a separate finding of overall dangerousness, independent of the factors that include the dangerousness of the crime itself, was based upon deference, Chevron deference to the VIA precedent. And obviously as a result of Wilbur Bright, that's been overruled. So how do you suggest the Court should deal with that issue? Well, Your Honor, first I would start with the language of Wilbur Bright. In there, specifically, the Supreme Court indicated that mere reliance on Chevron is not enough to overcome the heightened deference that had been previously given in the other decision. And this court in McKinney v. The City of Middleton, 49F4730, a 2022 case, indicated, or at least acknowledged, that stare decisis carries enhanced force when deciding precedent, the impact of precedent. And applying statutory decisis to afford this heightened deference that had been given by this court in Nagasani, which is a 2008 case, not only is this, you know, the stare decisis obviously impacts not only the court, but also the parties, you know, given the reliance the parties have on the Chevron deference for such a long time. In Nagasani, this court adopted the board's interpretation of the term particularly social crime. I'm sorry, particularly serious crime. And so, given that the court can, at this point, under Wilbur Bright, reinterpret that on its own, under stare decisis, we would submit that it shouldn't, given that... You're saying that because we have, over time, given deference by reason of Chevron's command, that stare decisis, and we must, we should continue to do that, even though the justifying, even though the reason that justified our enforcing the BIA's decision in the past no longer is valid? I'm saying, Your Honor, that it doesn't, you don't have to give Chevron, Chevron's no longer law. So you don't have to give Chevron... Well, I mean, that's what the court said in Wilbur Bright, right? When they overruled Chevron, it basically said, and don't worry, this isn't going to upset the apple cart too much, because stare decisis principles will still apply, even if you got to a statutory interpretation previously for some other reason, say Chevron, stare decisis principles apply strongly there. And they seem to be saying they are not planning to overrule their cases that interpreted a statute based on Chevron. But I guess one question I had is, I thought that our original interpretation of the particularly serious crime was preceded the amendment to the statute. Haven't they slightly changed the wording of the statute since then? About whether it constitutes or is, it constitutes or something like that? I'm not aware of that, Your Honor. The court has, even more recently in a case called Flores, indicated that Chevron deference applies, and that was in... Yeah, I mean, we just reaffirmed that.  I mean, but we didn't, that was, I thought that was a medivac. We just said, yeah, we said this, and a medivac can go away. But I didn't see that anyone had argued. I think it was amended in, was it, 2011. And I thought the question would be, well, you know, we talk about drive-by jurisdiction holdings. Was that sort of, maybe not a drive-by holding so much as a reaffirmance of a medivac without acknowledging that there had been an amendment to the statutory language. So, if we have not ever been called upon to interpret the revised statutory language, is there an argument that there is no stare decisis at play? Because we've never, we've never interpreted the new statute. We've never considered whether the new language means X, Y, or Z. Yeah, I mean, Your Honor, obviously no court has. I mean, at this point, I think only the Ninth Circuit has weighed in on this point as to, after Loper-Bright, whether or not Chevron deference went away. And should the court independently come up with a definition of what is the term, what the statutory term means. But, nonetheless, I would argue that even after Loper-Bright, I would say matter of frantesco, which is the Board's test, as well as matter of NAM, it still should be the test that's used by the court, even under its own independent judgment, where it interprets the law and says, well, given that we had given stare decisis to this before, but even if we independently look at it, matter of frantesco test still is valid, given that the term still, as interpreted by the court, as well as in Flores, and as Judge Bianco wrote in Ojo, I mean, that has been over and over and over again relied on by the court on matter of frantesco factors. I don't really understand your argument. I mean, I can see that there are many, many circumstances where a change of interpretation of a statute from one that has been long accepted would have seriously disruptive effects, and one should be cautious about all that disruption, where things have been operating in a fashion that assumed that a long established interpretation of the statute was what the statute meant. It would be quite harmful and disruptive all of a sudden to change it. But here, what's the big deal? I mean, here it means that in the past, one interpretation of the statute held sway, and now in the future, the BIA and the IJs have to make a separate determination automatically, rather than the determination from one finding dictating the second one. Now they would have to discuss the second as independently justified. What's the big deal? Why is that terribly upsetting? I mean, there is no big deal, Your Honor. Matter of NAM came out even more recently after matter of frantesco. What year was that? Just remind me. I don't remember how recent. Matter of NAM was... So frantesco came out in 1992, and matter of NAM in 2007. I guess another question, though, is should we address it in this case? It obviously hasn't been briefed. Wilbur Bright came out after the briefing. And Mr. Jimenez doesn't really raise this. As I noted, he didn't raise it. In his brief, he says he disagrees with the board's finding that he's in danger because of the conviction under the factors. He didn't raise the separate issue, but I'm not in danger overall because of X, Y, and Z. So not only is Wilbur Bright not briefed, but he doesn't really make a claim that he wanted some type of separate overall dangerousness determination. No, Your Honor. His argument was that because... The conviction is not a danger. It doesn't indicate dangerousness. Yeah, I mean, he just indicated that because the criminal court didn't think of him as a danger, giving him only a suspended sentence of three years, he thought that should be the primary consideration in the immigration courts. That is that it was not a particular serious crime, his argument was. It was not a particular serious crime because he had not gotten any jail time. But he didn't say, for example, the IJ should have been my whole life, and I got a job, and I'm doing all these other things. That wasn't part of his argument. It was all about the conviction. Exactly, Your Honor. Yes. I don't know if you can speak to this at all, but are you seeing this issue sort of starting to percolate, maybe post-Loper Bright? Are you seeing this in other cases, in other circuits, even if the decisions are not out there? Or before the BIA, are people asking them to revisit this? I don't know what the answer is. You may not know. I don't know if that's a fair question. I don't, Your Honor. When I looked over Westlaw about Loper Bright and particular serious crime, I only found a couple of cases. I just didn't know if within OIL sometimes you know what issues are starting to bubble up. Yeah. If this was something. No, this is not. And the Ninth Circuit case is the only one out there. It's an unpublished case, but it's the only one that directly dealt with this issue. And again, it sustained the government's argument. I see I only have six seconds left. You have six seconds. Go ahead. Okay. Well, there are six issues, so I will just briefly conclude. On issue one, interlocutory appeal of a BIA decision. So, no jurisdiction because the court only reviews final order removal. And even if it did have jurisdiction to review the board's denial, It was not an abuse of discretion, given that the board typically does not entertain interlocutory appeals. Given Mr. Jimenez's appeal had already been pending at the time he filed another one. We have already discussed particular serious crime, but just very briefly, even under a matter of OHO, which is, I think, the most recent decision to touch on this issue. There was a two-step analysis that Judge Bianco indicated the board's precedent requires. And that was done in this case. That is, the immigration judge and the board first considered the elements of the offense to see if it brings it into the ambit of a particular serious crime. And then when it determined that it did, given that this was a crime against an individual choking his girlfriend, it then examined not only the serious nature of the offense, but his sentence and the underlying factual findings and found that . . . The IJ said because he got three years, that indicates it was treated and it was considered a very serious offense. But if you add to that, that it was three years with zero jail time, that's the kind of thing that the defendant jumps up and down with joy about. I got no jail time, three years of probation. I don't know of another individual who would say three years of probation means it was regarded as a very serious offense. What about that? Yeah, his point, Your Honor, is that I think the IJ misstated his sentence. I think the IJ indicated that he did have to serve the time. Well, the IJ said he got three years. Three years. And that means it was treated as very serious. Right. But overlooking the fact that it was three years of probation, not of prison. Correct, Your Honor. But the board corrected that and when it . . . and usually this court reviews only the board's decision and only looks at the immigration decision. But the board indicated approval of the IJ's reasoning. Well, it did, but it ended up taking into account that it was the correct sentence, which was probation and suspended sentence. Not that he had to serve any time. Specifically addressing the issue of no jail time in this decision. Under torture convention . . . I think we have the other arguments. I appreciate you coming in today. Yes, Your Honor. Thank you very much. Have a good day. Thank you, Your Honor.